# MICHELLE GUARINO, ADMINISTRATRIX (ESTATE OF GEORGETTE DUFRESNE) *v.* ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY (AC 33540)

Gruendel, Sheldon and Schaller, Js.

Argued November 29, 2012—officially released May 14, 2013

*Gerald S. Sack*, with whom, on the brief, was *Jonathan Cantor*, for the appellant (plaintiff).

*Maria A. Cahill*, for the appellee (defendant).

*Opinion*

GRUENDEL, J. The plaintiff, Michelle Guarino, administratrix of the estate of Georgette Dufresne, appeals from the summary judgment rendered in favor of the defendant, Allstate Property and Casualty Insurance Company. She claims that the court improperly found that the defendant was entitled to judgment as a matter of law because the plaintiff was barred from recovering under the underinsured motorist policy issued by the defendant, as she had already recovered from the two tortfeasors an amount in excess of the policy limit. We disagree, and accordingly, affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of this claim. On June 27, 2007, the plaintiff's decedent, Georgette Dufresne, was driving along Hidden Lake Road in Haddam and approached a stop sign at the intersection with Route 81. Dufresne did not stop at this intersection because two large motor vehicles or trailers, owned by Anton Paving, LLC (Anton), and Lombardi Tire and Auto Repair, LLC (Lombardi), respectively, obstructed the view of the stop sign placed there. While proceeding through the intersection, Dufresne's car collided with that of Alexander Sokolow. As a result of the collision, Dufresne sustained severe bodily injuries that resulted in her death. At the time of the collision, Dufresne carried automobile

insurance issued by the defendant that included coverage for bodily injuries caused by underinsured motorists. Dufresne's policy contained a coverage limit of $100,000 per person per accident, with a total limit of $300,000 of coverage for any one accident. The portion of that policy dealing with the coverage limits on underinsured motorists states in relevant part:

"Limits of Liability

"The coverage limit shown on the declarations page for:

"1. '[E]ach person' is the maximum that we will pay for damages arising out of bodily injury to one person in any one motor vehicle accident, including damages sustained by anyone else as a result of that bodily injury.

"2. '[E]ach accident' is the maximum that we will pay for damages arising out of bodily injury to two or more persons in any one motor vehicle accident. This limit is subject to the limit for 'each person.' "

\* \* \*

"The limits of this coverage will be reduced by:

"1. [A]ll amounts paid by or on behalf of the owner or operator of the uninsured auto or underinsured auto or anyone else responsible. This includes all sums paid under the bodily injury liability coverage of this or any other policy.

"2. [A]ll amounts paid or payable under any worker's compensation law, disability benefits law, or similar law."

The plaintiff filed complaints, sounding in negligence, against Anton on April 14, 2008, and Lombardi on January 20, 2009. Thereafter, the plaintiff commenced the present action against the defendant and filed a complaint dated October 21, 2009, alleging that the plaintiff

was entitled to recover damages from the defendant under the terms of Dufresne's policy. On April 15, 2010, the actions against Lombardi and the defendant were consolidated.

On July 8, 2009, the plaintiff settled all of her claims against Anton in return for a payment of $20,000. She signed a release, as a component of the settlement, which stated in relevant part: "It is understood and agreed that this settlement is in full compromise of a doubtful claim . . . and that neither this release, nor the payment pursuant thereto shall be construed as an admission of liability, such being denied." Thereafter, on June 20, 2010, the plaintiff settled all of her claims against Lombardi in return for a payment of $225,000 and signed a release similar to that signed as part of her settlement with Anton.

The defendant then, on June 28, 2010, filed a motion for summary judgment, on the ground that the plaintiff was not entitled to recover any damages from the defendant because she had already recovered from the tortfeasors, Anton and Lombardi, $245,000, which was in excess of Dufresne's $100,000 policy limit for underinsured motorist coverage. The court granted the defendant's motion and rendered judgment in its favor on May 25, 2011. The court did not issue a memorandum of decision; instead it set forth its reasoning in its order, stating in relevant part: "[I]t is hereby found that no genuine issue of material fact exists regarding the fact that [the] plaintiff is barred from recovery under the underinsured motorist policy issued by [the] defendant as a matter of law because [the] plaintiff settled the underlying actions against all possible tortfeasors for a total amount that exceeds the limits of the policy at issue. . . . In applying *Savoie* [v. *Prudential Property & Casualty Ins. Co.*, 84 Conn. App. 594, 854 A.2d 786, cert. denied, 271 Conn. 932, 859 A.2d 930 (2004)] rather than *Garcia* v. *ITT Hartford Ins. Co.*, 72 Conn.

App. 588, 805 A.2d 779 (2002), as urged by the plaintiff, the court adopts the reasoning employed by the court in *Laderoute* v. *Cullen*, [Superior Court, judicial district of New Britain, Docket No. CV-03-0523027 (August 10, 2006) (41 Conn. L. Rptr. 810)]." On May 27, 2011, the plaintiff moved for reconsideration of the court's granting of summary judgment and to reargue the matter.[1] The court, on June 3, 2011, denied her motions. The plaintiff thereafter initiated the present appeal.

"We begin by setting forth the appropriate standard of review of a trial court's decision to grant a motion for summary judgment. On appeal, [w]e must decide whether the trial court erred in determining that there was no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . Because the trial court rendered judgment for the [defendant] as a matter of law, our review is plenary and we must decide whether [the trial court's] conclusions are legally and logically correct and find support in the facts that appear in the record." (Citations omitted; internal quotation marks omitted.) *Yancey* v. *Connecticut Life & Casualty Ins. Co.*, 68 Conn. App. 556, 558, 791 A.2d 719 (2002).

Practice Book § 17-49 "provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (Internal quotation marks omitted.) Id. "For purposes of summary judgment and this appeal, the court views the evidence in the light most favorable to the plaintiff." *Rosato* v. *Mascardo*, 82 Conn. App. 396, 400, 844 A.2d 893 (2004).

---

[1] On June 27, 2011, the plaintiff filed a motion for articulation, which the trial court denied on July 21, 2011. The plaintiff then, on August 2, 2011, filed a motion to review with this court. We granted the plaintiff's motion, but denied the relief requested therein.

"General Statutes § [38a-334] require[s] the insurance commissioner to adopt regulations with respect to automobile liability insurance policies and . . . such regulations have the force of statute." (Internal quotation marks omitted.) *Lane* v. *Metropolitan Property & Casualty Ins. Co.*, 125 Conn. App. 424, 438, 7 A.3d 950 (2010). "[We have repeatedly held] that an insurer may not, by contract, reduce its liability for . . . uninsured or underinsured motorist coverage except as [§ 38a-334-6] of the Regulations of Connecticut State Agencies expressly authorizes." *Allstate Ins. Co.* v. *Ferrante*, 201 Conn. 478, 483, 518 A.2d 373 (1986). "In order for a policy exclusion to be expressly authorized by [a] statute [or regulation], there must be substantial congruence between the statutory [or regulatory] provision and the policy provision. . . . Substantial congruence exists when [t]he terms in the policy . . . and [the regulation] correspond in all material respects." (Citation omitted; internal quotation marks omitted.) *Anastasia* v. *General Casualty Co. of Wisconsin*, 307 Conn. 706, 714, 59 A.3d 207 (2013).

In determining whether the policy provision at issue is substantially congruent with the regulation, we compare the text of the regulation with that of the relevant policy provision, mindful that "[a]n insurance policy is to be interpreted by the same general rules that govern the construction of any written contract and enforced in accordance with the real intent of the parties as expressed in the language employed in the policy. . . . The policy words must be accorded their natural and ordinary meaning." (Internal quotation marks omitted.) *Pacific Indemnity Ins. Co.* v. *Aetna Casualty & Surety Co.*, 240 Conn. 26, 29–30, 688 A.2d 319 (1997).

Dufresne's policy contains a provision that reduces the $100,000 limit of coverage for each person in each accident by "all amounts paid by or on behalf of the owner or operator . . . of the underinsured auto or

anyone else responsible." Section 38a-334-6 (d) (1) of the Regulations of Connecticut State Agencies, which enumerates the exclusive permitted reductions to underinsured motorist coverage, provides in relevant part: "The limit of the insurer's liability may not be less than the applicable limits for bodily injury liability specified in subsection (a) of section 14-112 of the General Statutes, except that the policy may provide for the reduction of limits to the extent that damages have been (A) paid by or on behalf of any person responsible for the injury . . . ." After examining the text of both the regulation and the policy provision, we conclude that the policy provision is "substantially congruent" with the regulation, and, therefore, is "expressly authorized" by § 38a-334-6 (d) (1) (A). See *Anastasia* v. *General Casualty Co. of Wisconsin,* supra, 307 Conn. 714–15.

In *Jacaruso* v. *Lebski,* 118 Conn. App. 216, 983 A.2d 45 (2009), this court considered whether a similar underinsured policy limit reduction provision was expressly authorized by § 38a-334-6 (d) (1) (A) and (C) of the regulations. Id., 222. The policy provision in *Jacaruso* stated in relevant part: "The limits of this [uninsured-underinsured motorist] coverage and/or any amounts payable under this coverage, whichever are less, will be reduced by . . . any amount paid by or for any liable parties." Id. After noting that "[t]here is no requirement that the policy provision must be identical to the regulation for it to be expressly provided for by [the regulation]," this court determined that this policy provision corresponded in all material respects with § 38a-334-6 (d) (1) (A) and (C) and, accordingly, concluded that the reduction set forth in the policy provision was expressly authorized by the regulation. Id., 226. As we see no meaningful difference between

the term "any liable parties," as used in the policy provision in *Jacaruso*, and the term "anyone else responsible," as used in Dufresne's policy, we conclude that the reduction is authorized by § 38a-334-6 (d) (1) (A).

Having determined that the policy reduction comports with § 38a-334-6 (d) (1) (A) of the regulations, we turn next to the question of whether the court properly rendered summary judgment in favor of the defendant after it found that the defendant's obligation under Dufresne's policy had been eliminated as a result of the plaintiff's settling with both tortfeasors for an amount exceeding the $100,000 policy limit. The plaintiff contends that the court could not properly grant the defendant's motion for summary judgment because, without a fact finder's determination of liability, there exists a genuine issue of material fact as to who is "responsible for the injury" under the policy, and accordingly, summary judgment was improper.[2] We disagree.

Our Supreme Court's holding in *Buell* v. *American Universal Ins. Co.*, 224 Conn. 766, 621 A.2d 262 (1993), is dispositive of this issue. "[I]n *Buell* . . . the plaintiff, Debra Buell, sustained injuries when the car that she was operating was struck by a second vehicle as a result of another collision between the second vehicle and a third vehicle. An arbitration panel found that the operator of the third vehicle, but not the operator of the second vehicle, was responsible for Buell's injuries. . . . Because the operator of the third vehicle was

---

[2] The plaintiff also argues that the court improperly granted the defendant's motion for summary judgment because it erroneously relied on the reasoning set forth in *Savoie* v. *Prudential Property & Casualty Ins. Co.*, supra, 84 Conn. App. 594, rather than following the reasoning in *Garcia* v. *ITT Hartford Ins. Co.*, supra, 72 Conn. App. 588. She contends that this court's holding in *Garcia* requires that a factfinder apportion liability among multiple tortfeasors in the uninsured and underinsured motorist contexts, which precludes the granting of summary judgment. We, however, need not reach that question because we have determined that the issue presented in this case is resolved by other case law.

underinsured, Buell sought underinsured motorist benefits under a liability insurance policy that she had purchased from the defendant, American Universal Insurance Company (American Universal). . . . American Universal also insured the operator of the second vehicle and paid $2500 to Buell under the policy issued to the operator of the second vehicle. . . . The arbitration panel awarded Buell underinsured motorist benefits but allowed American Universal to reduce the amount of benefits by, inter alia, the $2500 payment that Buell had received under the policy issued to the operator of the second vehicle. . . . The trial court determined, contrary to the conclusion of the arbitration panel, that American Universal was not entitled to reduce the amount of benefits by the $2500 payment. . . . American Universal cross appealed, claiming, inter alia, that the trial court improperly had precluded it from deducting the $2500 payment from the total amount that it was obligated to pay Buell under her policy. . . .

"On appeal, [our Supreme Court] concluded that § 38-175a-6 (d) (1) [of the Regulations of Connecticut State Agencies, now § 38a-334-6 (d) (1)],[3] which permits an insurer to limit its liability by deducting amounts paid by or on behalf of any party responsible for the injury, allows an insurer to deduct a settlement payment from the damages owed to its insured. . . . [Our Supreme Court] predicated [its] conclusion on the dual legislative intent of providing a certain minimum level of protection [to underinsured motorists and of] . . . prevent[ing] double recovery on the part of the insured . . . . [It] further observed that [t]o hold otherwise would provide the insured a windfall by permitting

---

[3] Section 38-175a-6 of the Regulations of Connecticut State Agencies was transferred to § 38a-334-6 of the Regulations of Connecticut State Agencies in 1992. See *Hartford Casualty Ins. Co.* v. *Farrish-LeDuc*, 275 Conn. 748, 758 n.9, 882 A.2d 44 (2005).

duplicate payments for the same injury." (Citations omitted; internal quotation marks omitted.) *Hartford Casualty Ins. Co.* v. *Farrish-LeDuc*, 275 Conn. 748, 761–62, 882 A.2d 44 (2005). Our Supreme Court determined that, despite the operator of the second vehicle not having been found "responsible for the injury," the reduction of the $2500 payment made on behalf of that operator was permitted because the payment, "which was made in settlement of Buell's suit against [the operator of the second vehicle], served two purposes—to avoid litigation of the claim against [that operator] and to compensate Buell for her bodily injuries." *Buell* v. *American Universal Ins. Co.*, supra, 224 Conn. 773. Moreover, in the multiple tortfeasor context, our Supreme Court has categorically held that "in accordance with the public policy underlying underinsured motorist coverage . . . the plaintiff . . . must be compensated from *all available sources*, in the amount that would have been available if the tortfeasor had carried a policy limit . . . equal to the plaintiff's coverage." (Emphasis in original.) *Anastasia* v. *General Casualty Co. of Wisconsin*, supra, 307 Conn. 726–27.

In light of our Supreme Court's determination in *Buell* that where there has been no finding of liability, pursuant to the language of § 38a-334-6 (d) (1) of the regulations providing for reduction of policy limits for amounts paid "by or on behalf of any party responsible for the injury," an insurer may nonetheless reduce the insured's underinsured motorist coverage limits by amounts made in settlement of the insured's claims against other tortfeasors, we conclude that the trial court in the present case did not err in determining that, under the language of Dufresne's policy, which comports with § 38a-334-6 (d) (1), the defendant may similarly reduce Dufresne's policy limit by the amounts received in settlement from Anton and Lombardi. We note that allowing for the defendant to make such a

reduction is in keeping with the principle that underinsured motorist policies "provide a *minimum level of uninsured [and underinsured] motorist coverage* for the protection of persons insured thereunder. [Our underinsured motorist statute] does not require that [underinsured] motorist coverage be made available when an insured has been otherwise protected . . . . Nor does the statute provide that the [underinsured] motorist coverage shall stand as an independent source of recovery for the insured . . . ." (Emphasis in original; internal quotation marks omitted.) *Anastasia* v. *General Casualty Co. of Wisconsin,* supra, 307 Conn. 724.

This court having determined that the defendant's reduction in Dufresne's policy limit by the amount paid to her estate in settlement of her claims was a proper reduction under the terms of the policy and relevant regulation, there exists no genuine issue of material fact regarding the defendant's obligation to the plaintiff under the terms of the insurance contract. We, accordingly, conclude that the court did not err in rendering judgment for the defendant as a matter of law.

The judgment is affirmed.

In this opinion the other judges concurred.